**FILED**
**Jun 29, 2023**
**01:12 PM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Albert Randall Worrell | ) | Docket No. 2021-07-0284 |
| | ) | |
| v. | ) | State File No. 105094-2019 |
| | ) | |
| Obion County School District, et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | |
| Compensation Claims | ) | |
| Amber E. Luttrell, Judge | ) | |

---

### Affirmed and Certified as Final

---

This appeal arises from a post-judgment request for medical treatment. The employee settled his claim for a left shoulder injury in June 2021, and his settlement provided for "authorized future medical expenses that are directly related to the work injury." Thereafter, a physician recommended a total shoulder replacement, which the employer denied following a utilization review. The Medical Director of the Bureau of Workers' Compensation disagreed with the "non-certification" recommended by the utilization review physician and ordered that the treatment be approved. The employer then filed a petition for benefit determination, arguing that the need for a total shoulder replacement did not arise primarily from the work accident. Following a hearing, the trial court concluded the employee had not shown by a preponderance of the evidence that the need for a total shoulder replacement arose primarily from the work accident, and the employee appealed. Upon careful consideration of the medical evidence and the record as a whole, we affirm the trial court's order and certify it as final.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

Charles L. Holliday, Jackson, Tennessee, for the employee-appellant, Albert Randall Worrell

Heather H. Douglas, Nashville, Tennessee, for the employer-appellee, Obion County School District

**Factual and Procedural Background**

Albert Randall Worrell ("Employee") worked in maintenance for Obion County School District ("Employer"). On October 24, 2019, Employee suffered a left shoulder injury while moving bleachers. His claim was accepted as compensable, and both disability and medical benefits were provided. Employee received authorized treatment from an orthopedic surgeon, Dr. David Pearce, who diagnosed rotator cuff, labral, and biceps tears in the left upper extremity. Employee underwent surgery in December 2019 and was eventually placed at maximum medical improvement in October 2020. On June 28, 2021, Employee and Employer entered into a settlement agreement that resolved Employee's claim for disability benefits and left open Employee's right to "reasonable and necessary, authorized future medical expenses that are directly related to the work injury." The agreement also identified Dr. Pearce as Employee's "authorized treating physician for future care." The trial court approved the settlement and entered judgment based on the terms of the settlement agreement.

In June 2022, Employee underwent an MRI of the left shoulder that was compared to a July 2020 study. The report noted evidence of a prior rotator cuff repair as well as "[m]arked glenohumeral degenerative joint disease." There was no evidence of a recurrent tear. In July 2022, Dr. Pearce noted continued pain in Employee's left shoulder and recommended a referral to his colleague, Dr. Adam Smith, "for discussion [of] a shoulder replacement." In his July 18, 2022 report, Dr. Pearce included a diagnosis of degenerative joint disease.

Dr. Smith first saw Employee on July 25, 2022. He noted that Employee "recently" began experiencing substantial pain while working. Dr. Smith reviewed the June MRI and noted that Employee's rotator cuff was "extremely thin" and that he suffered from "end-stage arthritis with loose bodies." X-rays taken on the date of this visit revealed "proximal humeral migration with end-stage arthropathy." Consequently, Dr. Smith recommended left shoulder surgery, including "reverse total shoulder arthroplasty with open subpectoral tenodesis."

On August 2, 2022, Dr. Steven Arsht issued a Utilization Review ("UR") report in which he recommended that the prescribed surgery not be certified. Dr. Arsht commented that "imaging results did not show a rotator cuff tear and there is insufficient documentation of objective findings." Employer then declined to authorize the recommended surgery. Pursuant to Tenn. Comp. R. and Regs. 0800-02-06-.07, Employee appealed the UR non-certification to the Bureau of Workers' Compensation's Medical Director, who disagreed with the UR decision and concluded, "it is appropriate to require the requested medical benefits," including "left reverse total shoulder arthroplasty and biceps tenodesis." Employer then filed its petition for benefit determination.

The parties took Dr. Pearce's deposition in October 2022, during which he testified that the objective findings prior to the first surgery in 2019 included "a component of underlying preexisting rotator cuff tear . . . and arthritis." He further acknowledged that he had "diagnosed some things that preexisted the injury" as well as "some things that were because of the injury."

With respect to the need for the total shoulder replacement and tenodesis surgery, Dr. Pearce acknowledged that he had described "the patient's [degenerative joint disease] and progression of arthritis" as "a direct result of his previous rotator cuff repair" in his July 18, 2022 report. During his deposition, however, Dr. Pearce clarified that Employee's degenerative joint disease and arthritis were *not* a new condition but were exacerbated by the previous surgical repair. Further, although Dr. Pearce testified that Employee had experienced an anatomic change in his shoulder condition since the first surgery, he described it as "[w]orsening of the glenohumeral DJD." When asked to address the primary cause of the need for additional surgery, Dr. Pearce responded as follows:

> That's a difficult one to say and I don't know that I know the absolute answer on that . . . . [Employee] had severe underlying problems with his shoulder. He was doing okay. After the injury and the surgery he was not[,] so whatever did push him over the threshold of what he had [sic]. As to say 50 percent, I can't say. Honestly[,] I wish I could, but that's such a difficult one because it's obviously a massive amount. You know, could you say right up to 50 percent is preexisting, could you say 75, that's a possibility . . . . There's . . . massive amounts of underlying conditions, but to assign that, I'm sorry, it's a difficult one.

Dr. Pearce then described Employee's case as one with "massive amounts of preexisting condition with an injury on top of it . . . a functioning person before, not a functioning person after."

On cross-examination, Dr. Pearce agreed with Employee's counsel that "there is no medically accepted way to quantify [a patient's] preexisting condition into a percentage." However, Dr. Pearce maintained that there were cases where it is "clear" that the preexisting condition is more than fifty percent the cause of the need for treatment following a work-related injury. In the present case, Dr. Pearce explained that Employee did not have end-stage glenohumeral degenerative joint disease when Dr. Pearce first saw him. However, Dr. Pearce commented that if Dr. Smith had advised him that "the majority of this is preexisting . . . , I would say I have no problem with that."

Following a hearing, the trial court concluded that Employee had not come forward with sufficient evidence that the need for the recommended surgery arose primarily from the work injury. Consequently, the court denied Employee's request for

3

an order compelling Employer to authorize the requested surgery. Employee has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2022). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2022).

**Analysis**

As a result of the General Assembly's passage of the 2013 Workers' Compensation Reform Act ("Reform Act"), for accidents occurring on or after July 1, 2014, an injured employee has the burden of proving that the work-related accident or injury "contributed more than fifty percent (50%) in causing . . . the need for medical treatment." Tenn. Code Ann. § 50-6-102(12)(C). Moreover, such evidence must be "to a reasonable degree of medical certainty," meaning that "in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code Ann. § 50-6-102(12)(D).

In circumstances where an employee alleges that the work accident caused a compensable aggravation of a preexisting condition, the employee must prove "to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." This burden requires proof that "the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(12)(A) & (B).

In the present case, two issues arose after Dr. Smith recommended a second surgery. First, the issue of medical necessity was addressed in Dr. Arsht's UR report and in the Medical Director's letter overturning the non-certification recommendation.

4

However, as explained in Tenn. Comp. R. and Regs. 0800-02-06-.01(24), utilization review is used to evaluate the "necessity, appropriateness, efficiency and quality of medical services." Utilization review "does not include the evaluation or determination of causation or the compensability of a claim." *Id.* Thus, although the Bureau's Medical Director overturned the UR physician's non-certification recommendation, that decision only addressed the medical necessity of the procedure; it was not intended to address whether the recommended surgery arose primarily out of the work-related accident. That determination rests with the Court of Workers' Compensation Claims.

As to the issue of causation, the only evidence submitted for the trial court's consideration was Dr. Pearce's deposition testimony and stipulated medical records, which contained no statements of causation with respect to the recommended surgery. Moreover, Dr. Pearce's testimony established that he could not state whether the work accident was more than fifty percent the cause of the need for a total shoulder replacement and tenodesis. Further, Dr. Pearce did not state that the need for the recommended surgery "more likely than not" arose from the work-related accident considering all causes. To the contrary, Dr. Pearce described Employee's preexisting degenerative condition as "severe" and "massive." Thus, we conclude the preponderance of the evidence supports the trial court's determination that Employee did not meet his burden of proof with respect to the need for the recommended surgery.

In his brief on appeal, Employee argues that, in circumstances where a preexisting condition is asymptomatic, and the work accident triggers the symptoms and resulting disability, it is unfair and – in essence – discriminatory to require an older employee to prove that his or her work accident was the primary cause of the need for treatment. Specifically, Employee argues that "his work injury aggravated a previously asymptomatic condition and brought it into a disabling reality that resulted in a loss of function." Employee further argues that it is unrealistic and unfair to expect a physician to assess a percentage of causation to a previously asymptomatic preexisting condition.

In support of these arguments, Employee points to prior cases in which appellate courts emphasized that employers take employees as they are and must bear the risk in circumstances where a work-related accident advances or aggravates a preexisting condition. Employee also cited cases discussing Tennessee's direct and natural consequence rule, which provides that "all the medical consequences and sequelae that flow from a primary injury are compensable." *See, e.g.*, *Ogden v. McMinnville Tool and Die, Inc.*, No. 2016-05-1093, 2018 TN Wrk. Comp. App. Bd. LEXIS 14, at *11 (Tenn. Workers' Comp. App. Bd. May 7, 2018).[1]

---

[1] Employee did not assert application of the direct and natural consequence rule before the trial court and, even if this argument had been presented, there is no expert medical evidence supporting a finding that the need for a total shoulder replacement flowed directly from the work accident.

In reviewing the cases Employee cited, however, we note that precedent from the Tennessee Supreme Court on which Employee relies predates the Reform Act. Although we agree, in general, that employers take employees as they are at the time of hire, *see e.g.*, *Gautreaux v. Hermitage Hall*, No. 2018-06-0366, 2019 TN Wrk. Comp. App. Bd. LEXIS 12, at *18 (Tenn. Workers' Comp. App. Bd. Mar. 12, 2019), there are statutory burdens of proof adopted in the Reform Act that cannot be ignored. Here, Dr. Pearce did not testify that the work accident was the primary cause of the need for the recommended surgery. He did not testify that the employment contributed more than fifty percent in causing the need for the recommended surgery. He did not testify that an aggravation of Employee's preexisting condition arose primarily from the work accident. He did not testify that Employee's current condition necessitating the recommended surgery was a "natural consequence" of or "flowed directly from" the work-related injury. In short, Employee has not met his burden of proof as expressly stated in Tennessee Code Annotated section 50-6-102(12). Finally, we note that Employee's argument regarding the purported discriminatory impact of statutory requirements concerning preexisting conditions on older employees is more properly directed to Tennessee's General Assembly or, if appropriate, in a properly filed constitutional challenge.[2]

**Conclusion**

For the foregoing reasons, we affirm the trial court's order and certify it as final. Costs on appeal are taxed to Employee.

---

[2] As we have noted previously and as Employee acknowledged in his brief, neither we nor the Court of Workers' Compensation Claims has the authority to address a facial challenge to the constitutionality of any provision of the Tennessee Workers' Compensation Law. *Johnston v. Siskin Steel & Supply Co.*, Nos. 2015-01-0023, 2018-01-0003, 2018-01-0008, 2020 TN Wrk. Comp. App. Bd. LEXIS 23, at *18-19 (Tenn. Workers' Comp. App. Bd. Mar. 24, 2020).



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

Albert Randall Worrell                      )      Docket No.  2021-07-0284
                                            )
v.                                          )      State File No.  105094-2019
                                            )
Obion County School District, et al.        )
                                            )
                                            )
Appeal from the Court of Workers'           )
Compensation Claims                         )
Amber E. Luttrell, Judge                    )

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 29th day of June, 2023.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Charles L. Holliday | | | | X | chuckh@garretylaw.com athomas@garretylaw.com |
| Heather H. Douglas | | | | X | hdouglas@manierherod.com lohman@manierherod.com |
| Amber E. Luttrell, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |



Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov